FILED
2021 Apr-23  AM 08:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANGELIA BLALOCK DUKE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE** |
| | ) | **NUMBER: _____** |
| **HARTFORD LIFE AND** | ) | |
| **ACCIDENT INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes now the Plaintiff, Angelia Blalock Duke, and hereby files her complaint against Hartford.

## PARTIES

1.     The Plaintiff, Angelia Blalock Duke ("Mrs. Duke"), was an insured under Group Long Term Disability Plan identified as Group Insurance Policy GLT-696954 ("the Plan"), who has been improperly denied disability benefits under the Plan.

2.     Defendant, Hartford Life and Accident Insurance Company ("Hartford"), is the Administrator of the Plan. Upon information and belief, Hartford is a foreign corporation incorporated in the State of Connecticut, with its principal place of business in Connecticut.  The Hartford conducts business generally in the

State of Alabama and specifically within this District.

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Mrs. Duke brings this action to recover benefits due to her pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(3).   This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131.  Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).  The Court also has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1132 as there is complete diversity between the parties and there is more than $75,000 at issue exclusive of costs and fees.

## INTRODUCTION

4.     The Plaintiff in this case was subjected to improper claim handling procedures by Hartford as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Mrs. Duke's valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit Plans." *Shaw v.*

*Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Mrs. Duke, as an employee insured for disability, was supposed to be treated as a beneficiary by Hartford as a statutory fiduciary. Instead, Hartford has breached those duties and victimized Mrs. Duke by engaging in improper claim handling procedures. As described in more detail below, Hartford has clearly engaged in bad faith claim handling and Mrs. Duke, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.     Mrs. Duke is an insured for benefits under the Plan. Hartford is the administrator of the Plan. The Plan provides insureds, like Mrs. Duke, LTD benefits and was in full force and effect at all times relevant to this Complaint.

6.     At all relevant times, Mrs. Duke was employed as a Registered Nurse and was a covered participant in the Plan, as defined in 29 U.S.C. § 1002(7) and under the terms and conditions of the Plan.  Mrs. Duke, a woman fifty-one (51) years of age, worked until her disabilities forced her to stop working on or about December 29, 2017.

7.     Mrs. Duke's medical disabilities include Mal de Debarquement Syndrome, persistent postural perceptual dizziness, depression, persistent right ear tinnitus, brain fog, and anxiety. The symptoms of her impairments and the side effects of the medications and treatment prescribed render Mrs. Duke unable to perform any job.

3

8.      Mrs. Duke was approved and began receiving LTD benefits from Hartford on September 21, 2018.

9.      In a letter dated November 2, 2018, Hartford informed Mrs. Duke that the Policy required she file for Social Security Disability benefits and offered the assistance of Hartford's Social Security Representative, The Advocator Group.

10.     Mrs. Duke subsequently applied and was approved for Social Security Disability benefits on May 5, 2020. The Social Security Administration deemed Mrs. Duke totally disabled as of December 1, 2017.

11.     Mrs. Duke received continuous LTD benefits from July 6, 2018 through August 22, 2019, totaling over a year of continuous benefits.

12.     Mrs. Duke's LTD benefits were approved and paid from July 6, 2018 until August 22, 2019 because Hartford determined that she was unable to perform the essential duties of her occupation, as defined under the Plan.

13.     By letter dated August 21, 2019, Hartford wrongfully terminated Mrs. Duke's LTD benefits beyond August 22, 2019.

14.     The Plan at issue states, in part:

**Disability** or **Disabled** means You are prevented from performing one or more of the Essential Duties of:

1.  Your Occupation during the Elimination Period;

4

2. Your Occupation for the 24 month(s) following the Elimination Period and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and

3. after that, Any Occupation.

15. Using this test of disability, Hartford found Mrs. Duke disabled and approved her LTD benefits for over a year as Mrs. Duke's major depressive disorder prevented her from performing the essential duties of her occupation.

16. However, on August 21, 2019, Hartford reversed the course it had maintained for over a year, terminating Mrs. Duke's LTD benefits. The termination of LTD benefits was based at least in part upon the paid review of Dr. Nasreen Razack-Malik ("Dr. Razack-Malik").

17. At the time Hartford terminated Mrs. Duke's LTD benefits on August 21, 2019, it had no information, form Dr. Razack-Malik's paid review or otherwise, that altered in some significant way its previous decision maintained over a year to pay LTD benefits to Mrs. Duke.

18. At the time Hartford terminated Mrs. Duke's LTD benefits on August 21, 2019, it had no information, from Dr. Razack-Malik's paid review or otherwise, that showed Mrs. Duke's medical condition had improved, when in fact Mrs. Duke's treating physicians opined that her condition continued to deteriorate.

19. At all relevant times, and prior to the termination of Mrs. Duke's

5

benefits, she was under the consistent care of her primary care physician, Dr. Theodore M. Kelley ("Dr. Kelley"); her psychiatrist, Dr. Richard Fellman ("Dr. Fellman"); and her therapist, Angela Ferguson, LPC ("Ms. Ferguson").

20.    On June 21, 2019, Dr. Fellman completed an Attending Physician's Statement which noted diagnoses of major depressive disorder and Mal de Debarquement Syndrome, noting that this latter condition "remains disabling unfortunately" and that Mrs. Duke "is not able to work."

21.    Dr. Razack-Malik, whom has never seen nor treated Mrs. Duke, rendered an opinion that she was not functionally impaired from a mental health perspective.

22.    Hartford paid Dr. Razack-Malik Four Hundred Eleven Dollars and Twenty Five Cents ($411.25) for the opinion that Mrs. Duke's disabilities did not restrict or limit her ability to work in her previous occupation.

23.    Dr. Razack-Malik did not address Mrs. Duke's Mal de Debarquement Syndrome, noting that "given the claimant's medical diagnosis of Mal De Debarquement, I will like to defer to an independent medical reviewer to assess all non-mental health complaints."

24.    Dr. Kelley responded to Dr. Razack-Malik's review with a statement on August 6, 2019 in which he opined that "[Mrs. Duke] has ongoing debility due to Mal de Debarquement and ongoing major depression with PHQ9 = 17 despite

psychotherapy and medical therapy with psychiatry."

25.     Hartford failed to credit Dr. Kelley's medical opinion or to follow Dr. Razack-Malik's recommendation to seek further evaluation for Mal de Debarquement Syndrome or other non-mental health complaints, and instead issued its denial of August 21, 2019 based entirely upon Dr. Razack-Malik's mental health evaluation.

26.     Hartford failed to consider Mrs. Duke's Mal de Debarquement Syndrome even during the period that the claimant received LTD benefits, instead initially approving her claim based upon her major depressive disorder and nothing else.

27.     In discrediting Mrs. Duke's Mal de Debarquement Syndrome during this initial claim, Hartford relied on the opinion of paid medical reviewer Dr. Siva Ayyar ("Dr. Ayyar").

28.     In a report dated September 12, 2018, Dr. Ayyar concluded that "the claimant did not/does not have a clearly discernable medical (physical) diagnosis" and, as such, "I would not endorse the imposition of any continuous biomechanical or time-based limitations at any point during the timeframe under review, January 1, 2018 through the present, going forward, into the foreseeable future."

29.     Hartford paid Dr. Ayyar Seven Hundred Forty Two Dollars and Fifty Cents ($742.50) for the opinion that Mrs. Duke's disabilities did not restrict or limit

her ability to work in her previous occupation.

30.     Responding to Dr. Ayyar's conclusions on October 2, 2018, Dr. Kelley stated "I am not in agreement with Dr. Ayyar. By definition mal de debarquement is a diagnosis of exclusion and there are no definitive tests that confirm this condition. She has been diagnosed with MDDS/PPPD by two ENT specialists."

31.     Dr. Ayyar responded to Dr. Kelley's statement on October 12, 2018 and noted that his opinion remained unchanged. Despite Dr. Kelley utilizing all of the space provided to him in his response to Hartford, Dr. Ayyar reported that Dr. Kelley's response was "thinly and sparsely developed" and did nothing to change his opinion that Mrs. Duke remained capable of unrestricted full time work activity.

32.     Despite Dr. Kelley's clarification that Mal de Debarquement Syndrome was "a diagnosis of exclusion" with "no definitive tests," Dr. Ayyar continued to deny this diagnosis based on a lack of objective testing.  Such conduct is, *ipso facto*, arbitrary and capricious.

33.     Hartford paid Dr. Ayyar Four Hundred Fifty Dollars ($450.00) for this addendum to his previous file review.

34.     While Dr. Ayyar and Dr. Kelley argued the merits of Mrs. Duke's disability, Hartford issued an approval of benefits on September 21, 2018 based solely upon Mrs. Duke's major depressive disorder, specifically citing Dr. Ayyar's dismissal of her Mal de Debarquement Syndrome symptoms.

35.     In its denial letter of August 21, 2019, Hartford reaffirmed this decision, stating "please refer to our letter of 9/21/18 in which we advised we approved your claim based [on] the diagnosis of depression, as the medical review of your claim did not support any disability due to dizziness or syncope."

36.     By and through counsel in a letter dated February 17, 2020, Mrs. Duke appealed the termination of her LTD benefits. Mrs. Duke included with her appeal letter additional medical records outlining the decline of her condition, as well as her Social Security file and personal declarations from herself and her husband.

37.     Dr. Kelley saw Mrs. Duke on August 5, 2019 and noted moderate to severe depressive symptoms with a PHQ-9 score of seventeen as well as ongoing Mal de Debarquement Syndrome symptoms including dizziness and disequilibrium necessitating a walking stick for ambulation. Dr. Kelley noted an extensive medical history of multiple specialist evaluations, intensive physical therapy, and unsuccessful vestibular therapy, and found that the claimant's Mal de Debarquement Syndrome was "ongoing and disabling" while her major depressive disorder was uncontrolled.

38.     Dr. Kelley reaffirmed, during an appointment on December 6, 2019, that Mrs. Duke was "unable to return to work."

39.     In support of Mrs. Duke's LTD claim, Dr. Fellman provided a Treating Provider Assessment Form on January 8, 2020 in which he reported treating the

claimant for depression and anxiety and stated that her Mal de Debarquement Syndrome "appears disabling" and "limits our success treating her depression as her overall capacity to function is greatly impaired." Dr. Fellman concluded that Mrs. Duke was totally disabled and unable to work on a sustained, regular basis.

40.    Ms. Ferguson completed a Treating Provider Assessment Form on January 15, 2020 and noted diagnoses of major depressive disorder, generalized anxiety, and complaints of symptoms of Mal de Debarquement Syndrome.

41.    Dr. Kelley's Treating Provider Assessment Form of February 3, 2020 noted that Mrs. Duke's disequilibrium secondary to Mal de Debarquement Syndrome severely hindered her task completion and concentration and necessitated hours of rest after even minimal exertion. Additionally, Dr. Kelley reported an extensive treatment history including physical and vestibular therapy, neurological and ENT workup, and care with an academic center, with overall poor response despite complete treatment compliance. Dr. Kelley deemed Mrs. Duke totally disabled, noting "she in no way behaves like someone exaggerating her symptoms for secondary gain. I sincerely believe she would work if she could."

42.    In support of her appeal, Mrs. Duke submitted a declaration, pursuant to 28 U.S.C. § 1746, through which she outlined the effects of her disabling conditions on her activities of daily living and her ability to return to work. Under penalty of perjury, Mrs. Duke reported constant dizziness, brain fog, and poor

concentration, making her unable to tolerate crowds, loud noises, fluorescent lights, prolonged sitting and standing, or using a computer. She reported that she was only "good" for two to three non-sequential hours each day.

43.     Mrs. Duke's husband, William Duke, also provided a declaration pursuant to 28 U.S.C. § 1746 in which he noted Mrs. Duke's need to lie down most of the day due to Mal de Debarquement Syndrome, persistent postural perceptual dizziness, and major depression, requiring her family to complete all household chores in her place.

44.     Despite providing proof of her disability both before the termination of benefits and throughout the appeals process, Hartford refused to award Mrs. Duke's LTD benefits and issued its final termination by letter dated May 12, 2020.

45.     In its final termination letter dated May 12, 2020, Hartford relied on the opinions of paid medical reviewers Dr. Jason Sebesto ("Dr. Sebesto") and Dr. David P. Yuppa ("Dr. Yuppa").

46.     Dr. Sebesto, whom has never seen nor treated Mrs. Duke, rendered the opinion that Mrs. Duke had no functional restrictions or limitations from a neurological perspective in contradiction to the opinion of the claimant's primary care physician and her history of testing and diagnosis of Mal de Debarquement Syndrome.

47.     While Dr. Sebesto's review acknowledged that Mrs. Duke filed for

disability due in part to disequilibrium, it did not specifically mention the claimant's diagnosed Mal de Debarquement Syndrome at any point, despite statements from Dr. Fellman and Dr. Kelley that Mal de Debarquement Syndrome, depression, and anxiety impaired Mrs. Duke's functioning.

48.     Dr. Yuppa, who reviewed Mrs. Duke's claim from a psychiatric perspective, did note impairments secondary to her physical conditions of disequilibrium and Mal de Debarquement as outlined by her treating physicians, but concluded that psychiatric restrictions and limitations were unwarranted based solely upon a review of the medical file.

49.     Neither Dr. Sebesto nor Dr. Yuppa attempted to contact any of Mrs. Duke's treating providers before rendering opinions that were solely based upon the records alone and contradicted the claimant's own physicians.

50.     Although neither Dr. Sebesto nor Dr. Yuppa had treated Mrs. Duke, spoke to Mrs. Duke, or even attempted to speak with her treating physicians, these paid reviewers opined that after a year Mrs. Duke now had the functionality to return to her previous occupation.

51.     Hartford paid Dr. Sebesto Two Thousand Eighty Dollars ($2,080.00) for the opinion that Mrs. Duke's disabilities did not restrict or limit her ability to work in her previous occupation.

52.     Hartford paid Dr. Yuppa One Thousand Five Hundred Sixty Dollars

($1,560.00) for the opinion that Mrs. Duke's disabilities did not restrict or limit her ability to work in her previous occupation.

53.     At all relevant times of Hartford's review of Mrs. Duke's claim, Hartford had the contractual right to obtain better evidence of Mrs. Duke's disability by ordering an independent medical examination.

54.     Rather than ordering Mrs. Duke to sit for an independent medical examination, Hartford relied on paid record reviews to support its denial of LTD benefits.

55.     Hartford did not allow Mrs. Duke the opportunity to review and respond to Dr. Sebesto's or Dr. Yuppa's paid reports, as Mrs. Duke was only informed of the results of these reviews and Hartford's reliance upon their opinions in the letter terminating benefits dated May 12, 2020. Rather than providing Mrs. Duke an opportunity to respond, Hartford informed Mrs. Duke that she could "bring a civil action."

56.     As of this date, Mrs. Duke has been denied benefits rightfully owed to her under the Plan.

57.     Mrs. Duke has met and continues to meet the Plan's definition of disabled.

58.     Mrs. Duke has exhausted any applicable administrative review procedures and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

59.     Hartford's refusal to pay benefits has caused tremendous financial hardship on Mrs. Duke.

## STANDARD OF REVIEW

60.     A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.

61.     When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent conflict of interest that mandates a heightened arbitrary and capricious standard of review.

62.     Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Hartford or to any other entity who may have adjudicated Mrs. Duke's claim. Therefore, the Court should review Mrs. Duke's claim for benefits under a *de novo* standard.

63.     Upon information and belief, Hartford evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

64.     Hartford has failed to comply with the letter of the claims procedures outlined in ERISA and therefore Mrs. Duke's claim for benefits should be received by this Court under a *de novo* standard.

65.     In the alternative, if the Court finds that Hartford is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's benefits constitutes a clear abuse of discretion as Hartford's decision to deny Mrs. Duke's LTD benefits was arbitrary and capricious.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

66.     Hartford has wrongfully denied LTD benefits to Mrs. Duke, in violation of the policy provisions and ERISA, for the following reasons:

(a) Mrs. Duke is totally disabled, in that she is prevented from performing one or more of the essential duties of her occupation;

(b) Mrs. Duke is entitled to disability benefits under the terms of the Plan, as she meets the Plan's definition of disability and she has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

(c) Hartford failed to accord proper weight to the evidence in the administrative record showing that Mrs. Duke is totally disabled;

(d) Hartford's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable, arbitrary, capricious, and otherwise violated the standards required by ERISA;

(e) Hartford failed to allow Mrs. Duke a right to access information

15

upon which it relied to make a final determination, and failed to allow Mrs. Duke an opportunity to respond to said information, before it made a final determination on her claim for LTD benefits;

(f) Hartford failed to obtain and consider relevant information pertaining to Mrs. Duke's disability before it made a final determination on her claim for LTD benefits;

(g) Hartford wrongfully denied Mrs. Duke a full, fair and impartial review of her benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary, looking instead for less credible evidence of marginal significance to support its goal of denying her benefits claim;

(h) Hartford failed to give proper weight to Mrs. Duke's own accounts regarding the debilitating effects of her conditions;

(i) Hartford ignored the records and opinions of Mrs. Duke's treating physicians which show that Mrs. Duke is totally disabled, and instead based its decision to deny benefits on its internal review by Hartford staff members and its paid reviewers, who had never seen or treated Mrs. Duke, who never spoke with her treating physicians about the nature of her disability, and who were not as qualified as

Mrs. Duke's treating physicians to formulate opinions regarding the nature and extent of her disability;

(j) Hartford failed to exercise reasonable flexibility in its claims review process to assure Mrs. Duke a full, fair review, well-reasoned, and principled of her claim;

(k) Hartford administered Mrs. Duke's claim for LTD benefits while acting under an inherent and substantial conflict of interest in that Hartford served both as fiduciary of and funding source for the Plan, and placed its own pecuniary interests above Mrs. Duke's interests in wrongfully terminating her LTD benefits and failing to administer the Plan as an impartial decision-maker, free of such conflict of interest, would;

(l) Hartford made erroneous interpretations of some evidence in violation of its obligation to discharge its duties with care, prudence, skill, and diligence;

(m)     Hartford acted in bad faith by denying Mrs. Duke's claim based upon the inability of Hartford's paid reviewers to find Mrs. Duke disabled, and otherwise failed to administer the Plan honestly, fairly and in good faith, and to at all times act in Mrs. Duke's best interests;

(n) Hartford terminated Mrs. Duke's benefits without the support of any

new information that altered in some significant way the previous decision over a year to pay LTD benefits to Mrs. Duke;

(o) Hartford terminated Mrs. Duke's benefits without the support of any new information that showed improvement in Mrs. Duke's medical condition, when in fact, her treating physicians opined that her condition continued to deteriorate;

(p) Hartford failed to support the termination of benefits with substantial evidence;

(q) Hartford imposed a standard not required by the Plan's provisions, by requiring objective evidence of Mrs. Duke's subjective medical conditions where such evidence cannot be reasonably provided;

(r) Hartford denied Mrs. Duke's claim for a lack of objective medical evidence when Mrs. Duke has provided ample subjective evidence of a disability and Hartford has neither identified any objective evidence that Mrs. Duke could have supplied to support the claim and has not had Mrs. Duke undergo an independent medical examination or a similar in-person probative procedure to test the validity of her complaints;

(s) Hartford failed to consider Mrs. Duke's non-exertional limitations caused by her disability, such as the side effects of her prescribed

18

medication, her ability to regularly attend work, and the effect her disability has on her concentration, persistence and pace when performing the material duties of her occupation;

(t) Hartford's termination of Mrs. Duke's LTD benefits failed to provide a detailed explanation and the basis of its disagreement with the opinions of Mrs. Duke's treating physicians;

(u) Hartford failed to consider the Social Security Administration's investigation and finding of disability in its evaluation, despite its obligation to consider such evidence, instead ignoring the evidence generated by the Social Security Administration in investigation of this claim;

(v) Hartford wrongfully denied Mrs. Duke's LTD benefits in such other ways to be shown through discovery and/or hearing.

67.   As a result of the foregoing, the relief to which Mrs. Duke is entitled includes: (1) monthly LTD income benefits to Mrs. Duke, (2) payment of back benefits from August 23, 2019 to the date of judgment, (3) pre-judgment interest, (4) equitable relief, including declaratory and injunctive relief, to redress Hartford's practices that are violative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (6) an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTOIN

## COUNT ONE
## ERISA (Claim for Benefits Owed under Plan)

68.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

69.     At all times relevant to this action, Mrs. Duke was a participant of the Plan underwritten by Hartford and issued by Charlotte-Mecklenburg Hospital Authority DBA Carolinas Healthcare System and was eligible to receive disability benefits under the Plan.

70.     As more fully described above, the termination and refusal to pay Mrs. Duke's benefits under the Plan for the period from at least on or about August 23, 2019 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Mrs. Duke constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1.     A judgment ordering the applicable standard of review in this case is *de novo*;

2.     A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying her

LTD benefits owed to her through the Plan;

3.     In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable, arbitrary and capricious, and unsupported by substantial evidence;

4.     Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by terminating Mrs. Duke's LTD benefits; that Mrs. Duke is entitled to a continuation of future LTD benefits from Defendant pursuant to the Plan;

5.     Declaratory and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff; enjoining Defendant from further violations of its fiduciary duties; and directing Defendant to take all actions necessary to administer the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

6.     A judgment ordering Defendant to pay Mrs. Duke's LTD benefits from August 23, 2019 through the date judgment is entered herein, together with pre-judgment interest on each and every such monthly payment through the date of judgment;

7.      An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

8.      For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this the 22nd day of April, 2021.


                                        /s/ Peter H. Burke_____
                                        Peter H. Burke (ASB-1992-K74P)
                                        pburke@burkeharvey.com
                                        BURKE HARVEY, LLC
                                        3535 Grandview Parkway, Suite 100
                                        Birmingham, Alabama 35243
                                        Phone: 205-930-9091
                                        Fax: 205-930-9054
                                        *Attorney for Plaintiff Angelia Blalock Duke*